**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Calvin Harden,<br><br>Plaintiff,<br><br>vs.<br><br>General Motors LLC,<br><br>Defendant. | **CASE NO.: ________________**<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff Calvin Harden, by undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. This is an action by the purchaser of a 2022 GMC Yukon Denali vehicle (hereafter the "subject vehicle") manufactured and sold by the Defendant General Motors LLC. The subject vehicle is equipped with Defendant's 6.2L V-8 "L87" engine, one of approximately 597,630 engines that Defendant recalled because they contain manufacturing defects that cause the engines to sustain internal damage, fail, and lose propulsion without warning. The subject vehicle's engine seized while Plaintiff was driving, causing the subject vehicle to shut off and refuse to restart, and the engine had to be replaced. The subject vehicle has been out of service at least one hundred forty (140) days. Plaintiff seeks damages related to his vehicle's defective engine and Defendant's failure to honor the terms of its warranty.

2. The Plaintiff would not have purchased the subject vehicle had he been made aware of the subject vehicle's defects.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of the State of Illinois. Defendant General Motors LLC is a citizen of the State of Delaware and the State of Michigan. The amount in controversy exceeds $75,000.00 because Plaintiff seeks, among other relief, revocation of acceptance of and a refund of the purchase price of a vehicle for which he paid $81,998.00, exclusive of options, fees, taxes, and finance charges.

4. This Court also has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

5. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

7. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District.

## PARTIES

8. Plaintiff Calvin Harden was, at all relevant times, an adult individual who is domiciled in Homewood, Cook County, Illinois, and who intends to remain there, and who purchased the subject vehicle in Merrillville, Lake County, Indiana, which was manufactured

or sold by Defendant. Plaintiff is a citizen of Illinois.

9. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of Indiana and throughout the United States. Defendant GM is a Delaware limited liability company. GM's sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan. GM is a citizen of Delaware and Michigan for diversity purposes.

## FACTUAL ALLEGATIONS

10. On December 28, 2023, Plaintiff purchased a 2022 GMC Yukon Denali 4WD equipped with the L87 6.2L V-8 engine, Vehicle Identification Number 1GKS2DKL9NR169457 (hereafter the "Vehicle") from CarMax Auto Superstores, Inc., a motor vehicle dealership located at 1370 East 79th Place, Merrillville, Lake County, Indiana 46410 (hereinafter "CarMax"), for personal, family, or household use.

11. The purchase price of the Vehicle was $81,998.00, excluding options, fees, taxes, and finance charges.

12. At the time of delivery, the Vehicle's odometer read 16,995 miles.

13. Prior to purchasing the Vehicle, Plaintiff relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty and Limited Powertrain Warranty that accompanied the sale of the Vehicle, including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiff's decision to purchase the Vehicle.

14. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle delivery to the consumer. Additionally, Defendant promised to repair or replace the powertrain components, including the Vehicle's engine, found to be defective in material or workmanship during the 5-year / 60,000-mile period following such vehicle delivery to the consumer. The unexpired balance of these warranties transferred with the Vehicle to Plaintiff upon his purchase.

15. Because Defendant made a written warranty to Plaintiff with respect to the Vehicle, Defendant may not, pursuant to 15 U.S.C. § 2308, disclaim, modify, or limit the duration of any implied warranty arising with respect to the Vehicle, and any purported disclaimer, modification, or limitation of the implied warranty of merchantability contained in the documents accompanying Plaintiff's purchase of the Vehicle is ineffective.

16. On December 28, 2023, and following the execution of the Vehicle purchase documents, Plaintiff took delivery of the Vehicle.

17. Defendant designates the Vehicle's 6.2L V-8 engine by its Regular Production Option code L87 (hereafter the "L87 engine").

18. On April 24, 2025, Defendant submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration, assigned NHTSA Recall No. 25V-274 and Defendant's own recall number N252494000, covering approximately 597,630 model year 2021 through 2024 vehicles equipped with the L87 engine, including 2022 GMC Yukon vehicles such as the Vehicle.

19. In that report, Defendant disclosed that the engines in the recalled vehicles "may have manufacturing defects that can lead to engine damage and engine failure," and

identified two root causes: rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish.

20. Defendant further disclosed that the suspect engine build period ran from March 1, 2021, through May 31, 2024, and that between April 29, 2021, and February 3, 2025, Defendant had received 28,102 field complaints concerning the L87 engine, of which 14,332 involved a loss of propulsion. Upon information and belief, the Vehicle's engine was manufactured within that suspect build period.

21. Defendant thus began receiving field complaints of L87 engine failures on or about April 29, 2021 - more than two and one-half years before Plaintiff purchased the Vehicle - and Defendant opened and closed an internal investigation into those failures in February 2022, approximately twenty-two months before the purchase.

22. Defendant therefore knew, before Plaintiff purchased the Vehicle on December 28, 2023, that the L87 engine was prone to bearing damage, catastrophic internal engine damage, and sudden loss of propulsion.

23. Notwithstanding that knowledge, as of December 28, 2023, Defendant had not disclosed the L87 engine defect to the National Highway Traffic Safety Administration, to the owners of vehicles equipped with the L87 engine, or to the purchasing public, and Defendant did not disclose the L87 engine defect to Plaintiff at or before the time Plaintiff purchased the Vehicle.

24. In connection with his purchase of the Vehicle, Plaintiff was asked to, and did, review the safety recall status of the Vehicle and a vehicle history report for the Vehicle. Because Defendant had not then reported the L87 engine defect to the National Highway

Traffic Safety Administration or disclosed it to the public, no recall, safety notice, or other disclosure of the L87 engine defect appeared in the public databases that Defendant itself populates, and Plaintiff had no means of learning of the defect through reasonable diligence.

25. In connection with the recall, Defendant also issued Special Coverage Adjustment N252494003, by which Defendant undertook to repair or replace the L87 engine, without charge to the owner, for a period of ten (10) years or 150,000 miles from the vehicle's original in-service date, whichever occurred first. That special coverage applies to the Vehicle and constitutes a written warranty running from Defendant to Plaintiff.

26. Since the time of Vehicle delivery to the present, the Vehicle has been out of service at least one hundred forty (140) days because of the catastrophic engine failure and other defects.

27. On or about November 15, 2025, while Plaintiff was operating the Vehicle, the Vehicle cut off while being driven and thereafter would not start.

28. That same day, Plaintiff presented the Vehicle to Chevrolet of Homewood, an authorized GM dealership located at 18033 Halsted Street, Homewood, Cook County, Illinois 60430 (hereinafter "Chevrolet of Homewood"), and complained that the Vehicle had cut off while being driven and would not start.

29. At the time the Vehicle's odometer read 55,709 miles.

30. Chevrolet of Homewood verified the complaint, found that the Vehicle would neither start nor crank, found the mega fuse in the Vehicle's power distribution block blown and no power reaching the Vehicle's starter, and found that the Vehicle's engine had seized.

31. Chevrolet of Homewood attempted a repair by replacing the Vehicle's engine, together with the Vehicle's radiator, oil cooler lines, and the seals, gaskets, and bolts

necessary to replace the engine. Defendant paid for that repair under its warranty.

32. During the same visit, Chevrolet of Homewood found the Vehicle's left side engine mount coming apart and replaced it; found that the Vehicle's starter had shorted out and blown the fuse on the Vehicle's battery, and replaced the starter and the battery; and found that the Vehicle's OnStar module was not operating as designed and had shorted internally, and replaced that module.

33. Also during the same visit, and at Defendant's direction pursuant to Defendant's recall number N252510321, Chevrolet of Homewood reprogrammed the Vehicle's engine control module, and pursuant to Defendant's recall number N242435631, performed Defendant's remedy on the Vehicle's serial data gateway module.

34. Defendant's recall N252510321 reprograms the engine control module so that the vehicle will display a warning message in the driver information center if diagnostic trouble code P0016 sets. Diagnostic trouble code P0016 reports a fault in the correlation between the position of the engine's crankshaft and the position of its camshaft. Defendant's own software remedy is thus keyed to the crankshaft, which is one of the two components Defendant identified to the National Highway Traffic Safety Administration as a root cause of the L87 engine defect.

35. Upon information and belief, the seizure of the Vehicle's engine was caused by the same L87 engine defect that Defendant reported to the National Highway Traffic Safety Administration - rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish. A seized engine that will not turn over is the signature of precisely that bearing failure.

36. The Vehicle's engine failed at 55,709 miles, within the five-year / 60,000-mile

term of Defendant's Limited Powertrain Warranty and well within the ten-year / 150,000-mile term of Special Coverage Adjustment N252494003.

37. Defendant paid for the replacement of the Vehicle's engine as warranty work and at no charge to Plaintiff for that repair, and Defendant thereby determined that the failure of the Vehicle's engine was a failure that Defendant's warranty covered.

38. During this visit, the Vehicle was out of service at least one hundred forty (140) days, and was not ready for pick up until on or about April 4, 2026.

39. Plaintiff was required to pay a three hundred dollar ($300.00) deductible in connection with that visit.

40. The Vehicle's engine seized on or about November 15, 2025, approximately seven months after Defendant disclosed the L87 engine defect to the National Highway Traffic Safety Administration on April 24, 2025. In the interval between its own disclosure and the failure of the Vehicle's engine, Defendant did not repair or replace the Vehicle's L87 engine and did not otherwise remedy the defect that Defendant had by then reported.

41. Upon information and belief, the replacement engine that Defendant supplied and that Defendant's authorized dealership installed in the Vehicle was manufactured, or remanufactured, to the same specifications and by the same processes as the engines Defendant recalled, and carries the same defect.

42. On August 20, 2026, the Office of Defects Investigation of the National Highway Traffic Safety Administration opened Engineering Analysis EA26005, covering approximately 997,743 model year 2021 through 2026 General Motors vehicles equipped with the L87 engine, because it continued to receive reports of engine failures after completion of the recall remedy. As of the opening of that investigation, the Office of Defects

Investigation had received 499 complaints of engine failure occurring after the recall remedy had been performed, twenty-six (26) of which followed a complete engine replacement, and Defendant had itself reported 6,953 complaints.

43. A vehicle whose engine can sustain catastrophic internal damage, seize, and lose propulsion without warning while being driven presents an unreasonable risk to the safety of Plaintiff, his passengers, and the motoring public.

44. As a result of the L87 engine defect, the catastrophic engine failure, and the replacement of the Vehicle's engine, the Vehicle is worth substantially less than a comparable vehicle without such repair history, and Plaintiff has suffered a diminution in the value of the Vehicle.

45. Had Plaintiff known of the L87 engine defect at the time of purchase, he would not have purchased the Vehicle, or would have paid substantially less for it.

46. The defects experienced by Plaintiff substantially impair the use, value, and safety of the Vehicle.

47. Plaintiff provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

48. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

49. By U.S. First Class Mail dated July 30, 2026, Plaintiff notified Defendant of the above-mentioned nonconformities with the Vehicle and Defendant's failure to conform the Vehicle to the terms of Defendant's express warranty within a reasonable period of time. Within the same letter, Plaintiff revoked his acceptance of the Vehicle.

50. Defendant has never made a good-faith response to Plaintiff's revocation of

acceptance.

## TOLLING OF STATUTES OF LIMITATIONS

### I. Fraudulent Concealment Tolling

51. Plaintiff did not and could not have known that the Vehicle was equipped with a defective L87 Engine prone to bearing failure, engine seizure, and catastrophic loss of propulsion at the time of purchase or within the applicable limitations period.

52. Any applicable statute of limitations is tolled because Defendant knowingly and actively concealed the L87 engine defect and its associated safety risks from Plaintiff.

53. Defendant had a duty to disclose the defect because it possessed exclusive and superior knowledge of the L87 engine's propensity for internal bearing failure and catastrophic engine seizure, which poses a serious safety risk, including sudden loss of propulsion at highway speeds.

54. Defendant knew of the defect prior to sale through, inter alia, pre-production testing, warranty data, dealer repair data, customer complaints, and its obligation to monitor safety-related data, including reports submitted to NHTSA.

55. Despite this knowledge, Defendant failed to disclose the defect at the time of sale or thereafter and instead marketed the Vehicle as safe, reliable, and durable, thereby actively concealing the true nature of the defect.

56. Defendant further concealed the defect by failing to identify or acknowledge the root cause of engine failures when Plaintiff presented the Vehicle for service, and by attributing symptoms to normal operation, maintenance issues, or isolated incidents rather than a systemic defect.

57. Until the 2025 recall and related disclosures - triggered only after government investigation - Defendant uniformly failed to inform consumers that the L87 engine was

defective and could fail without warning, leaving Plaintiff without the ability to discover the defect through reasonable diligence.

58. Defendant's concealment was knowing, affirmative, and ongoing, and was intended to delay or prevent Plaintiff from discovering his claims.

59. As a result of Defendant's conduct, Plaintiff was kept ignorant of material facts necessary to assert his claims, and Defendant is equitably estopped from asserting any statute of limitations defense.

**II. Discovery Rule Tolling**

60. Plaintiff's claims did not accrue, and the statute of limitations was tolled, until Plaintiff discovered or reasonably could have discovered the existence of the L87 engine defect.

61. The defect is latent and not discoverable through reasonable inspection because it resides in internal engine components - including the bearings, crankshaft, and connecting rods - and manifests only upon sudden and catastrophic failure.

62. Prior to the NHTSA investigation and Defendant's subsequent recall, Plaintiff had no reason to suspect that the Vehicle contained a systemic defect, particularly in light of Defendant's uniform representations that its vehicles were safe, reliable, and of high quality.

63. Even where symptoms occurred, Defendant failed to disclose the true cause of those symptoms and instead concealed the existence of a common defect, thereby preventing Plaintiff from discovering his claims through reasonable diligence.

64. Plaintiff therefore could not reasonably have discovered the defect or its cause until Defendant's public admissions and recall activity in or about 2025.

**III. Estoppel**

65. Defendant was under a continuing duty to disclose the true nature, quality, and

safety risks of the Vehicle and the L87 engine defect.

66. Defendant knowingly, affirmatively, and actively concealed the defect and continued to misrepresent its vehicles as safe and reliable, despite its knowledge of the defect and its potential for catastrophic engine failure.

67. Plaintiff reasonably relied on Defendant's omissions and misrepresentations and was thereby prevented from timely asserting his claims.

68. Accordingly, Defendant is equitably estopped from asserting any statute of limitations defense.

## IV. Class Action Tolling

69. The statutes of limitation applicable to Plaintiff's claims – including, without limitation, his express warranty and implied warranty claims – have been tolled by class action tolling by reason of John v. General Motors, LLC, originally filed on June 27, 2025 as Case No. 2:25-cv-00914 (E.D. Wis.) and subsequently transferred from the Eastern District of Wisconsin to the Eastern District of Michigan (upon transfer, assigned Case No. 2:25-cv-12097), which was brought on behalf of a putative class of purchasers and lessees of vehicles equipped with the L87 engine that includes Plaintiff.

## FIRST CAUSE OF ACTION
## Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

70. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

72. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

73. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

74. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

75. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

76. Defendant has failed to remedy the subject vehicle's engine defect within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

77. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff has suffered damages.

**SECOND CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and Ind. Code § 26-1-2-314, *et seq.***

78. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

79. Defendant is a merchant with respect to motor vehicles.

80. The Vehicle was subject to the implied warranty of merchantability, as defined in Ind. Code § 26-1-2-314, et seq., running from the Defendant to the Plaintiff.

81. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase of the subject vehicle.

82. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiff purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

83. Plaintiff notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiff discovered it.

84. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty, Ind. Code § 26-1-2-313**

85. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86. In connection with the sale of the subject vehicle to the Plaintiff, Defendant provided Plaintiff with a New Vehicle Limited Warranty and Limited Powertrain Warranty, and subsequently issued Special Coverage Adjustment N252494003, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

87. Plaintiff relied on Defendant's warranty when he agreed to purchase the subject vehicle and Defendant's warranty was part of the basis of the bargain.

88. Plaintiff submitted his Vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair the dangerous engine defect under the Vehicle's warranty as described herein within a reasonable period of time.

89. Plaintiff has given Defendant reasonable time to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

90. As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

91. The Plaintiff could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiff's acceptance of the subject vehicle.

92. The Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to the time of purchase, that the subject vehicle contained a defective engine.

93. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of his vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

## FOURTH CAUSE OF ACTION
**Revocation of Acceptance, Ind. Code § 26-1-2-608**

94. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

95. Plaintiff reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

96. After a lengthy opportunity provided to Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

97. The defects substantially impair the value of the Vehicle to the Plaintiff.

98. By a letter dated July 30, 2026, the Plaintiff notified Defendant of said defects and of Plaintiff's intent to revoke acceptance and demanded return of the purchase price of said Vehicle.

99. Defendant has nevertheless failed to make a good-faith response to this demand within thirty (30) days of its receipt.

100. As a result of Defendant's conduct the Plaintiff has been damaged.

**FIFTH CAUSE OF ACTION**
**Breach of the Indiana Deceptive Consumer Sales Act,**
**Ind. Code § 24-5-0.5-1, *et seq.***

101. The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

102. Plaintiff is a "person" under Ind. Code § 24-5-0.5-2(a)(2) because he is an individual.

103. Plaintiff's acquisition of the Vehicle, and Defendant's warranty of the Vehicle, are each a "consumer transaction" under Ind. Code § 24-5-0.5-2(a)(1) because each is a sale or other disposition of an item of personal property, a service, or an intangible to a person for purposes that are primarily personal, familial, or household.

104. Defendant is a "supplier" under Ind. Code § 24-5-0.5-2(a)(3) because it regularly engages in and solicits consumer transactions in the State of Indiana, including by importing, assembling, marketing, advertising, distributing, selling, and warranting GM automobiles that are sold and warranted to Indiana consumers.

105. Ind. Code § 24-5-0.5-3(a) provides that a supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction.

106. Ind. Code § 24-5-0.5-3(b)(1) further declares it a deceptive act for a supplier to represent, orally or in writing, that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have, and Ind. Code § 24-5-0.5-3(b)(2) declares it a deceptive act for a supplier to represent that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

107. The allegations set forth herein constitute unfair, abusive, or deceptive acts, omissions, or practices in violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1, et seq.

108. In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the subject vehicles, including the Plaintiff's vehicle, equipped with the 6.2L V-8 L87 engine are defective. The existence of the defect, which manifests in all or substantially all of the vehicles equipped with the 6.2L V-8 L87 engine, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, requires expensive and inconvenient maintenance efforts, and causes the subject vehicles to be worth substantially less than they would otherwise be valued. Defendant's failure to disclose these defects and their ramifications offends public policy and is unethical, unscrupulous, and substantially injurious to consumers.

109. Accordingly, Defendant violated the Indiana Deceptive Consumer Sales Act, as it represented that the subject vehicles had performance, characteristics, uses, or benefits that they do not have, and represented that the subject vehicles were of a particular standard, quality, or grade when they were of another.

110. Defendant's concealment of the L87 engine defect was undertaken as part of a scheme, artifice, or device with intent to defraud or mislead, and is therefore an "incurable deceptive act" as defined in Ind. Code § 24-5-0.5-2(a)(8), for which no notice is required under Ind. Code § 24-5-0.5-5(a).

111. In the alternative, and to the extent any notice is required, Plaintiff provided Defendant with written notice describing the nature of the deceptive act and the actual damage suffered therefrom by letter dated July 30, 2026, and Defendant did not cure.

112. Defendant's failure to disclose the subject vehicle defects, and its breach of the express warranty and the implied warranty of merchantability set forth above, proximately caused the economic damages sustained by Plaintiff.

113. As a result of Defendant's acts, Plaintiff has suffered damages in that he is left with a vehicle of diminished value and utility because of its defects, which continues to pose a serious safety risk.

114. Plaintiff is a reasonable consumer who does not expect that his vehicle will suffer from the above-described defects, which is the reasonable and objective consumer expectation for vehicles.

115. As a result of Defendant's misconduct, Plaintiff has been harmed and has suffered actual and economic damages in that his vehicle is defective and requires repairs or replacement and is worth less money.

116. Defendant violated the law willfully and knowingly, and Plaintiff is entitled to the relief provided by Ind. Code § 24-5-0.5-4(a), including actual damages, treble damages, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against Defendant as follows:

a. An order approving revocation of acceptance of the subject vehicle;

b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the subject contract;

c. Incidental and consequential damages;

d. Punitive damages;

e. Reasonable attorney's fees;

f. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 20, 2026

By: /s/ Sergei Lemberg

Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*